## Case No. 2,584.

### The CHAMPION.

[10 Chi. Leg. News, 10; 23 Int. Rev. Rec. 355, 359; 2 Cin. Law Bul. 226, 271.]

District Court, E. D. Michigan. April 30, 1877.

SEAMAN'S WAGES—FOREIGN VESSEL—SHIPKEEPER'S LIEN.

1. Where a Canadian vessel is in custody of the marshal, upon a claim made by an American citizen, the court will take jurisdiction of an intervening libel filed by one of her seamen, notwithstanding his contract is made and performed in Canada, and all the parties are British subjects.

2. As the lien of the seaman exists by the general maritime law, the courts of this country will enforce such a lien arising in Canada, notwithstanding the absence of admiralty courts there.

3. There is no lien for services as shipkeeper while the vessel is laid up during the winter.

[See The A. R. Dunlap, Case No. 513; The Amstel, Id. 339. But, contra, see The Windermere, 2 Fed. 722; The Erinagh, 7 Fed. 231; The Hattie M. Bain, 20 Fed. 389; The Velox, 21 Fed. 479; The Scotia, 35 Fed. 916; The Gilbert Knapp, 37 Fed. 209; The Main, 2 C. C. A. 569, 51 Fed. 954; Norwegian S. S. Co. v. Washington, 6 C. C. A. 313, 57 Fed. 224; The Hattie Thomas, 59 Fed. 297.]

4. Where a party shipped as seaman in the spring, served as such during the season of navigation, and then remained on board during the winter, keeping the ship: Held, that he could recover as seaman, only for his services during the season of navigation though no new contract was made.

In admiralty. The libel claimed for services as seaman and cook for one year, at the rate of sixteen dollars per month, but it appeared that, after the close of navigation and until libellant was discharged, his services were those of a shipkeeper. The answer set forth that the Champion was a Canadian vessel; that libellant and the owners of the vessel were residents of Ontario; that the contract was made in Canada, and insisted that the same was to be construed and governed by the laws of that dominion, and that no lien exists under these laws for services as seaman; that these services were rendered upon the sole credit of the owner of the vessel; that there is no admiralty court in the province of Ontario, and that the laws of said province do not recognize a lien for any of the services set forth in the libel. The facts were, that libellant was employed from March 26th, 1874, to March 26th, 1875; that he served as deck hand three weeks, and during the remainder of the season of navigation as cook, and occasionally as deck hand; and after the vessel, laid up, without discharge or change of wages, he continued on the vessel as shipkeeper to the end of the year. All the services were rendered under a single contract of hiring. The services were continuous, and small sums were paid from time to time, amounting altogether to twenty-five dollars. The contract of hiring was made in Canada, and the vessel plied between Canadian ports, touching occasionally at American ports.

Moore & Moore, for libellant.

F. H. Canfield, for claimants.

BROWN, District Judge. At the time this libel was filed, the vessel was in custody of the marshal upon another libel, filed by an American citizen for repairs put upon her in this state. Although libellant would not have been entitled to this remedy in Canada, and although as a general rule, I should decline to take jurisdiction of controversies be-

tween Canadian subjects, especially where the contract was made and performed in Canada, I think there is no objection to doing so, (at least in the absence of a consular protest), where the vessel is already in custody, and the libel is filed to enable the seamen to obtain pay from the proceeds of sale; in such case, it would be manifestly unjust to send the seaman back to a foreign country, when the court which has taken possession of the vessel is able to afford him relief here.

The principal defense to this claim was made upon the theory that inasmuch as there are no admiralty courts in the province of Ontario, it follows that the seaman has no lien upon his vessel; that liens are creatures of local law, and that he can obtain no lien by proceeding in the admiralty courts of this country. I think this objection, however, is completely disposed of by the reasoning in the case of The Maggie Hammond, 9 Wall. [76 U. S.] 435, and in The Avon [Case No. 680]. A distinction is taken in both these cases between liens existing by the law maritime, and those which are mere creatures of local legislation. The former are held to exist everywhere, unless expressly excluded by statute, and the absence of local admiralty courts will not prevent the courts of another country from exercising admiralty jurisdiction, and enforcing them, but, as observed by the supreme court in the former case (page 451), "Where the lien exists only by some local statute, and is not given by the maritime law, admiralty courts in another jurisdiction can no more take jurisdiction of a case, not within the local statute, than the courts of the country could do where the cause of action arose; but where the lien is given by the maritime law, the question in such a case, in the admiralty courts of the United States, is not one of jurisdiction, but of comity," etc. Again, "maritime liens are of little or no value, in a country where there are no appropriate tribunals for their enforcement, as they must remain dormant and unavailable, but the denial of such jurisdiction to her admiralty courts, by one country, whether it be by legislation or by the prohibitions of her common law courts, cannot have the effect to impair or diminish the jurisdiction in such cases of the admiralty courts of any other country, if they are legally clothed with the power and authority to enforce such remedies for the breach of a maritime contract." In this case, the court enforced the lien of the owner of a cargo upon the vessel, under the maritime law, notwithstanding the libellant and claimant were both foreigners; the place of shipping and of consignment foreign ports, and the whole ground of libel a matter which occurred abroad. In the case of The Avon [supra] a libel in rem was sustained for a collision in the Welland canal, notwithstanding the fact that a lien for such a cause of action could not be enforced in any of the Canadian courts, and it was denied that any such lien existed. The case

was reasoned with great elaborateness, and contained all the authorities up to that time, bearing upon the question. See, also, The Champion [Case No. 2,583]. In the subsequent case of The Moxhan, L. R. 1 Prob. Div. 107, also 3 Asp. Marit. Law Cas. 191, it was held by the court of appeals, reversing in that respect the decree of the high court of admiralty that the question of liability of a ship owner proceeded against in an English admiralty court, for an injury done by his ship to a pier projecting into the sea, but standing upon the soil of a foreign country, is governed by the lex loci, and not by the English law; and where an English ship, by negligence of her master and crew, ran into and damaged a pier on the coast of Spain, and the owners of the pier proceeded against the ship for the damage in an admiralty court, and the defendant pleaded that by the law of Spain a ship owner is not responsible for damage occasioned by the negligence of the ship master and crew, the plea was held good. This case was not only in tort, but it appeared affirmatively that there was not a mere absence of a court to enforce a lien, but that the courts of the country had expressly excluded the existence of a lien for this cause of action, although a lien was given in such cases by the local law of England, the same rule would undoubtedly obtain here. Indeed, it was decided by this court, in the case of The Ottawa [Case No. 10,616], that no lien existed for damage done to a pier. But inasmuch as the lien of the seaman exists, by the general law maritime, and the defense is set up, not that the laws of Canada exclude such lien, but simply that they have provided no court for its enforcement, I deem it a clear inference, from the cases above cited, that the libellant may enforce his lien upon the vessel in this court.

Notwithstanding some conflict of authority, I think the better rule is, that a shipkeeper, particularly of a domestic vessel, has no lien upon her for wages, by the general maritime law. It was so decided by Judge Lowell in the case of The Island City [Case No. 7,109], following in this respect Phillips v. The Thomas Scattergood [Id. 11,106], Gilpin, J.; Weaver v. The S. G. Owens [Id. 17,310]. See, also, The John T. Moore [Id. 7,430]. In the case of The Trimountain [Id. 14,175], the court allowed a watchman for his fees before she was taken into custody by the marshal, giving as a reason that that constituted one of the privileged demands of the maritime law, as administered under the ordinance of Louis XVI., and was so ranked in the Code de Commerce. In the case of The Dolphin [Id. 3,973], I held that the underwriter had a claim on that vessel for his premiums, following in this respect French law. But the supreme court had already determined the contract of insurance to be a maritime contract, and it seemed to me the lien followed naturally upon this decision, and inasmuch as the civil law conferred the

lien, I considered myself at liberty to adopt it. I did not intend, however, to decide that the courts of this country, would give a lien in every case where it was given by the Commercial Code of France; indeed, many of these liens, particularly those for the wages of the master, for supplies furnished for domestic vessels, and for the expense of building and equipping, have been held by the supreme court not to exist in this country. Where the contract is • maritime, I should be very reluctant to deny the lien, but where, as in this case, the services are rendered, not in aid of the navigation of the vessel, but while she is laid up for the winter, it seems to me the service is not maritime, and consequently that the party is not entitled to his lien.

Nor do I think the lien is saved in this case, because no new contract was made, but the party remained on board during the winter, without having been paid in the fall for his services, as cook. Had his services as watchman been performed merely as an incident to the navigation of the vessel, and while she was lying up in some port, it would have been saved, by the rulings in such cases as The Gazelle [Case No. 5289]; Pittman v. Hooper [Id. 11,185]; Brown v. Lull [Id. 2,018]; The Jane and Matilda, 1 Hagg. Adm. 187; The Sloop Canton [Case No. 2,388]. But the contract as a cook and seaman terminated with the season of navigation and with the discharges of the crew, and if libellant remained on board while the vessel was laid up in winter quarters, he must be held to have remained, by implication, under a different contract, although no new contract was actually made, circumstances had intervened, which put an end to the first contract, and he must be held to know that if he remained on board during the winter, it was not in the capacity of a seaman or cook.

Inasmuch as the time when the vessel was laid up, does not clearly appear, the libellant is entitled to recover for his wages as seaman and cook, at sixteen dollars per month, from the 26th of March to the 1st of December, which, in absence of evidence to the contrary, I would hold to be the close of navigation.